IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | | |
|---|---|---|
| Adele Striss, | ) | |
| | ) | Civil Action No.  8:04-22435-26BI |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT OF MAGISTRATE JUDGE** |
| | ) | |
| John E.  Potter, | ) | |
| Postmaster General | ) | |
| United States Postal Service, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on the defendant's motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1), and motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  The plaintiff has pled claims pursuant to Title VII of the Civil Rights Act of 1964, as amended.  The plaintiff alleges that the defendant discriminated against her on the basis of her gender, race, and in retaliation for her complaints regarding the same. She further contends that defendant's proffered justifications for not promoting her or assigning her developmental details are subterfuges for actual illegal motives.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## FACTS PRESENTED

The plaintiff, is a white female, who was employed by the United States Postal Service ("USPS"), from 1973 until her retirement in 2003. From March 1997 through March 2001, plaintiff was employed as the Postmaster of the Anderson, South Carolina facility ("Anderson").  It is generally alleged by the defendant that the plaintiff was a mediocre performer during her entire time as Postmaster in Anderson.  (*See* Def.'s Mem. Supp.

Summ. J. Ex. 1 at 353-57.)  The plaintiff rejects the defendant's characterization of her performance and demands that she performed to a level that nearly warranted a "far exceeds" rating on her review.  (Pl.'s Resp. Summ. J. Ex. 6 at 96-97.)

Based upon a history of poor employee relations at the Anderson Post Office, including the period in which the plaintiff was Postmaster, a climate survey was conducted. (Def.'s Mem. Supp. Summ. J. Ex. 1 at 360-62.) Follow-up surveys were conducted in 1998 and 1999.  There is some dispute between the parties as to the reasons for the surveys, as well as the validity of the results thereof.  It is undisputed, however, that supervisors under the plaintiff's leadership were the subject of the criticisms levied against the management of the Anderson Post Office, although the parties disagree as to what extent. (*See, e.g., id*.) On April 24, 2000, as a result of those surveys it was announced that five supervisors in the Anderson Post Office, under the plaintiff's supervision, should be reassigned.  (*See* Def.'s Mem. Supp. Summ. J. Ex. 12; Ex. 11 at 460-64.)  The parties dispute the propriety of the investigation that led to the reassignment, in part, because the plaintiff contends that neither herself nor any of the five supervisors at issue were ever interviewed.  (Pl.'s Resp. Summ. J. Ex. 24 at 1.)

The plaintiff filed Equal Employment Opportunity ("EEO") complaints in December 1999; April and September 2000; and April and June, 2001, generally alleging that she had been denied promotions and detail assignments on account of her gender, race, and in retaliation for prior EEO activity. In May 2000, the plaintiff also sent written notice to Congressman Lindsay Graham's office concerning the reassignment of the five supervisors from the Anderson Post Office.

Sometime in 2001 the plaintiff accepted a level 22 position in San Antonio, Texas. The plaintiff remained in that position until 2003 when she was promoted to a level 25 MPOO domiciled in Harlingen, Texas.  (Pl.'s Resp. Summ. J. Ex. 36).  The plaintiff's family remained in South Carolina and she continued to be a registered voter in South Carolina,

with the hopes of seeking developmental opportunities with the defendant in South Carolina again. The plaintiff complains that she continued to be denied detail requests based upon her gender and in retaliation for her EEO activity while in Texas.

Plaintiff retired from the USPS in 2004.

## APPLICABLE LAW

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this

standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## ANALYSIS

### I.    Subject Matter Jurisdiction OVER RETALIATION HARASSMENT AND RACE CLAIMS

In order to file a Title VII action in federal court, a plaintiff must fulfill two requirements: (1) the complaint must be filed within the time allotted by Title VII, and 2) the complainant must first have exhausted her administrative remedies. *See Brown v. GSA*, 425 U.S. 820, 832 (1976); *Sloop v. Memorial Mission Hospital, Inc.*, 198 F.3d 147, 148 (4th Cir. 1999) ("It is axiomatic that a claimant under Title VII must exhaust his administrative remedies by raising his claims before the EEOC.") (internal citation omitted); 42 U.S.C. § 2000e-16(c). Failure to comply with either of these requirements wholly deprives the district court of jurisdiction over the case, as each requirement is a prerequisite to federal subject

4

matter jurisdiction.  *See Sloop,* 198 F.3d at 148*; Davis v. North Carolina Dept. of Correction*, 48 F.3d 134, 137 (4th Cir. 1995) ("Before a federal court may assume jurisdiction over a claim under Title VII, however, a claimant must exhaust the administrative procedures enumerated in 42 U.S.C. § 2000e-5(b) . . . .").

Here, the plaintiff timely filed EEO complaints, but failed to exhaust her administrative remedies with regard to her claims of racial discrimination and retaliatory harassment.  The issues considered by the ALJ included: retaliatory harassment, race (white), color (white), sex (female) age, and reprisal.  (*See* Def.'s Mem. Supp. Summ. J. Ex. 57 at 6.) The claim of retaliatory harassment included the plaintiff's claims related to "denial of far exceeds merit rating;" climate surveys; the reduction of the staff complement; and the requirement of the fundamental supervision course.   (*See id*. Ex. 55.)  The plaintiff expressly abandoned her "retaliatory harassment, race, and color" claims at the administrative level, when she specifically "drop[ped]" them on appeal to the EEOC Office of Federal Operations ("OFO").  (*Id*. Ex. 57 at 6.)  Because the plaintiff did not appeal these claims, the Court may not hear them now.  The plaintiff makes no rejoinder whatsoever, apparently conceding the failure of jurisdiction as to these issues.

The Court, therefore, lacks subject matter jurisdiction over the plaintiff's claims of racial discrimination and retaliatory harassment.  *See Sloop*, 198 F.3d at 148.  Accordingly, the Court must not consider the allegations of racial discrimination asserted in paragraphs 34-40, or the allegations of retaliatory harassment asserted in paragraphs 9, 13, 14, and part of paragraph 20 (second sentence) (stating, "That Defendant's agents further retaliated against Plaintiff after she filed an EEO complaint by making her work conditions intolerable . . . .").  (*See* Complaint ¶¶ 9 ("denial of far exceeds merit rating"), 13 (climate survey), 14 (staff complement), 20 (second sentence) (harassment and staff complement), 34-40 (race discrimination).)

The Court does consider the plaintiff's discrimination claim based on her gender and her retaliation claim based on her EEO activity.

## I.    GENDER DISCRIMINATION - FAILURE TO PROMOTE CLAIM

The plaintiff claims that the USPS discriminated against her based upon her gender and retaliated against her for EEO activity, when the USPS allegedly denied her details, assignments, and promotions that she sought. (Pl.'s Compl. at ¶¶ 10-33.) The details, assignments, and promotions at issue include: Upstate Manager of Post Office Operations ("MPOO"), the Midlands MPOO, the Low Country MPOO, the Greenville Postmaster, the Manager Operations Support, the Manager of Marketing, and Senior MPOO.

As the Fourth Circuit has explained, in the wake of *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), a Title VII plaintiff may "avert summary judgment . . . through two avenues of proof." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (emphasis added). A plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision. *Diamond*, 416 F.3d at 318. Pursuant to the 1991 Act, the impermissible factor need not have been the sole factor. As long as it motivated the adverse action, the plaintiff can establish an unlawful employment practice. *See* 42 U.S.C.A. § 2000e-2(m). Alternatively, a plaintiff may "proceed under [the McDonnell Douglas ] 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285. The plaintiff does not attempt to establish her discrimination or retaliation claim

using direct or circumstantial evidence but relies exclusively on the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting proof scheme.[1]

Under *McDonnell Douglas*, an employee must first prove a *prima facie* case of discrimination by a preponderance of the evidence. If she succeeds, the employer has an opportunity to present a legitimate, nondiscriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the *prima facie* case drops out of the picture, and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 802-05.

In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court reiterated that evidence of pretext, combined with the plaintiff's prima facie case, does not compel judgment for the plaintiff, because " [i]t is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." *Id.* at 147 (citation omitted). However, the Court also stated that, under the appropriate circumstances, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* It is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination. *See id.* at 147-48. Pretext analysis does not convert Title VII into a vehicle for challenging unfair--but nondiscriminatory--employment decisions. *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir.1989). Conclusory allegations, without

---

[1]  The plaintiff nowhere contends that she has direct evidence of retaliation or of a discriminatory failure to promote. She does, however, dedicate substantial energy to describing various statements of supervisory employees of the defendant, which purportedly show discriminatory, ruthless, or dismissive attitudes towards personnel and the EEO processes. (Pl.'s Mem. Resp. Summ. J. at 22-24.) The statements have nothing to do with the plaintiff specifically and some have been made substantially after any of the alleged adverse actions were taken against the plaintiff. The Court affords them little, if any, relevance.

more, are insufficient to preclude the granting of the defendant's summary judgment motion. *Ross*, 759 F.2d at 365.

### A.    *Prima Facie* Case

The parties agree that to establish her *prima facie* case of a discriminatory failure to promote, the plaintiff must show: (1) that she is a member of a protected class; (2) that she applied for the position in question; (3) that she was qualified for that position; and (4) that the USPS rejected her application under circumstances that give rise to an inference of unlawful discrimination. *See Bryant v. Aiken Reg. Med. Ctrs., Inc.*, 333 F.3d 536, 544-45 (4th Cir. 2003).  The defendant generally concedes that the plaintiff has created genuine issues of fact in regards to her *prima facie* case,[2] (Def.'s Mem. Supp. Summ. J. at 32) but rejects that she can rebut the defendant's legitimate, non-discriminatory reasons for the USPS's actions.  The Court agrees.

### B.    Legitimate Non-Discriminatory Reason

The defendant has met his burden of production by generally identifying the following legitimate, non-discriminatory reasons for rejecting the plaintiff's request for various positions: (1) she was not the most qualified candidate for certain details; (2) she was not qualified for the position; (3) the position was filled; (4) problems existed with the Anderson Post Office; and (5) she had proved herself disloyal and untrustworthy to at least one management official.  "Job performance and relative employee qualifications [is] widely recognized as [a] valid, non-discriminatory bas[i]s for any adverse employment decision." *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 960 (4th Cir. 1996); *see*

---

[2]  The defendant does contest the plaintiff's ability to establish a *prima facie* case in regards to certain positions, however.  Specifically, the defendant argues that the plaintiff cannot establish a *prima facie* case of discrimination in regards to those positions which were already filled at the time of the plaintiff's application or for which she was simply not qualified.  While the Court agrees, its recommendation is premised primarily upon the plaintiff's inability to demonstrate that the reasons articulated by the defendant for declining her request for specific positions are false.

*also Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir. 2004); *Karpel v. Inova Health System Services*, 134 F.3d 1222, 1229 (4th Cir. 1998) ("Inova's termination of Karpel was based on her unsatisfactory job performance, including,  her tardiness and failure to complete her monthly summaries.")

### C.    Pretext

Because the defendant has proffered legitimate, non-discriminatory reasons for the USPS's actions, the plaintiff bears the burden of demonstrating that the real reason for discharge is an illegal one.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142-43 (2000).      As is most common, the plaintiff attempts to satisfy this burden by suggesting that the defendant's proffered reasons are pretextual or false.  *See id.* at 144.  The analysis is most easily conducted by considering the defendant's legitimate, non-discriminatory reason and the plaintiff's response for each promotion or detail request on a case-by-case basis.[3]

### 1.    Upstate MPOO

In March, 2000 the plaintiff was interviewed for the position of Upstate MPOO.  The defendant did not fill the position immediately, and a Thom Carney remained detailed in the MPOO.  On April 25, 2000 the Upstate MPOO position was posted for a second time. (Pl.'s Mem. Resp. Summ. J. Ex. 27).  The plaintiff again requested the detail. (*Id.* Ex. 28.)   On May 1, 2000 Asbury notified the plaintiff that her request was being denied because "due to . . . employee allegations" he did "not feel that [her] leaving the Anderson Office at [that] time" was in the best interest of the postal service.  (*Id*. Ex. 29).  Notwithstanding, the plaintiff was apparently interviewed again for the Upstate MPOO position in August, 2000.

---

[3]  The plaintiff has not actually tried to rebut the legitimate, non-discriminatory basis for rejecting her application in regards to each detail at issue in this case.  Of course, for those she does not address, she has failed to meet her burden at this stage of the *McDonnell Douglas* framework.

It is undisputed that Selwyn Epperson, was ultimately selected for the Upstate MPOO detail.[4]

The defendant states that the USPS chose Epperson over the plaintiff because he was better qualified.  The evidence of record indicates that the interview board for the Upstate MPOO position asked each applicant, including the plaintiff, the same questions in the same manner (Def.'s Mem. Supp. Summ. J. Ex. 17 at 73-74; Ex. 18 at 151-53) and concluded, unanimously, that a white male, Selwyn Epperson, was the best candidate (*id*. Ex. 17 at 78-79).  The committee believed that Epperson was better qualified based upon superior knowledge, preparation, thoroughness of answers, professionalism, presentation, and attitude during the interview.  (*Id*. Ex. 17 at  78; Ex. 18 at 151-54.)  The board found the plaintiff to be a satisfactory candidate but less prepared and was disturbed by answers related to her abuse of sick leave.  (*Id*. Ex. 77-78; Ex. 18 at 151-54.)

The plaintiff has not demonstrated that she has superior qualifications to Epperson;[5] although, she certainly contends as much.  Unfortunately, her "self assessment" and

_____

[4]  In her statement of facts, the plaintiff strangely alleges that she was the "only" candidate for the position.  She later clarifies that after the second posting, the other two candidates withdrew their applications from consideration.  But, the evidence of record indicates that in the Spring of 2000, the plaintiff was denied the position due to pending issues in the Anderson office.  (Pl.'s Mem. Resp. Summ. J. Ex. 29.) The plaintiff has submitted no evidence that the stated reason, in the Spring of 2000, was pretextual.  Moreover, it is clear that Epperson and others were ultimately considered for the detail.  (*See* Def.'s Mem. Supp. Summ. J. Ex. 17 at 73-74; Ex. 18 at 151-53).

[5]  The plaintiff also tries to compare her qualifications to a Thom Carney, who she admits had been detailed to the Upstate MPOO position since October, 1999 and would ultimately remain in the detail until August, 2002.  But, by her own admission, she was not competing against Carney for the position.  He already held it at the time of her application.  Moreover, the defendant does not claim to have rejected the plaintiff's application because of Carney.  The plaintiff, however, summarily contends that Carney had been permitted to serve in the detail longer than Postal regulations generally allow.  Of course, the plaintiff has cited no evidence to this end and the Court is unpersuaded, regardless.  The Court rejects any comparison between the plaintiff and Carney as relevant evidence of pretext.  Presumably, the decision to retain Carney in the position, whether proper or not, held all applicants for the MPOO at bay, including the plaintiff and Epperson, the person ultimately detailed to the position.  Therefore, whatever error the defendant made in retaining Carney did not individually effect the plaintiff in any way that could be characterized as "disparate."

"assertions concerning her own qualifications and the shortcomings of her co-workers" falls "far short." *Evans*, 80 F.3d at 960-61. The plaintiff has tried to mechanically compare her tenure of service and job positions with those of Epperson. (Pl.'s Mem. Resp. Summ. J. at 32-33.) Of course, whether someone is qualified for a job is a substantially more nuanced process than simply a rote review of the job titles that an applicant has held. The defendants were entitled to consider all variety of factors and the record reflects those considerations.

Specifically, the committee members have articulated specific reasons for finding Epperson a superior candidate to the plaintiff. (Def.'s Mem. Supp. Summ. J. Ex. 17 at 77-78; Ex. 18 at 151-54.) The plaintiff's rote comparison of job history and a bald-faced claim that she was "vastly more experienced than Epperson both in total years' service and in total years' management experience" (Pl.'s Mem. Resp. Summ. J. at 31) is simply too thin a reed to stand, in the face of other unrebutted and objective rationale articulated by the review committee.[6] As the defendant points out, more years of experience does not make an individual better qualified to meet the demands of a position or organization, nor do more years of experience automatically make one candidate better qualified than another. *See*

---

[6] The plaintiff also argues that the Mid-Atlantic Area offices' ultimate decision to reject Epperson for the UPOO is evidence that he was not a superior candidate in the first instance. First, the rejection of Epperson says nothing concerning his qualifications relative to the plaintiff. In other words, it is wholly possible that he was not qualified for the position and, yet, still better qualified than the plaintiff. Second, whether the review committee ultimately made the "right" decision in choosing Epperson is immaterial, so long as their belief that he was the superior candidate was the "true" reason for their decision. *See Hawkins*, 203 F.3d at 279 (holding that where an employer provides a legitimate, nondiscriminatory reasons for its actions, "it is not [the Court's] province to decide whether the reason was wise, fair, **or even correct**, ultimately, so long as it was the true reason for [the employer's action]" (emphasis added).). As discussed, the Court disagrees that the plaint has submitted any evidence to the contrary. *See Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 940 (7th Cir. 2003). (stating that "it was up to [the plaintiff] to produce evidence showing that Wal-Mart **did not genuinely believe** that she had lifted the $12.65. It is not enough for her to show that the investigators might have **made a mistake** in their conclusion" (emphasis added))

11

*Heiko v. Columbo Savings Bank, F.S.B.*, 434 F.3d 249, 261(4th Cir. 2006) (stating that "greater management expertise due to her previous jobs at other banks and her role in the Mortgage Operations Department" does not "conclusively reveal[ ]" a non-discriminatory basis to compare the relative qualifications of the candidates); *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 269-71 (4th Cir. 2005).

Critically, when comparing the relative job qualifications of two candidates, the Fourth Circuit has expressly instructed that where "the plaintiff has made a strong showing that his qualifications are ***demonstrably superior***, he has provided sufficient evidence that the employer's explanation may be pretext for discrimination." *Heiko,* 434 F.3d at 261-62 (citing *Anderson*, 406 F.3d at 269) (emphasis added). But where, as here, "a plaintiff asserts job qualifications that ***are similar or only slightly superior*** to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer." *Heiko, 434 F.3d at 261* (citing *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 649 & n.4 (4th Cir.2002) (emphasis added); *Evans*, 80 F.3d at 960).

Accordingly, in this case, "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Evans*, 80 F.3d at 960-61 (quotation omitted). The plaintiff has not produced evidence of "demonstrably superior" qulaifications. *Heiko, 434 F.3d at 261*. Title VII simply cannot be used as "a vehicle for substituting the judgment of the court for that of the employer." *Jiminez v. Mary Washington College*, 57 F.3d 369, 377 (4th Cir. 1995) (citing *EEOC v. Clay Printing Co.*, 955 F.2d 936, 946 (4th Cir. 1992) (noting that the federal courts should "not . . . direct the business practices of any company")).

Importantly, "[t]he crucial issue in a Title VII action is an unlawfully discriminatory motive for a defendant's conduct, not the wisdom or folly of its business judgment." *Jiminez*, 57 F.3d at 383 (citing *Furnco Constr. Corp. v. Waters*, 438 U.S. 567 , 577 (1978)); *see also Hawkins v. Pepsico, Inc.*, 203 F.3d 274, 280-82 (4th Cir. 2000) (noting that "[p]ersonality conflicts and questioning of job performance are unavoidable aspects of employment").

Where an employer provides a legitimate, nondiscriminatory reason for its actions, "'it is not [the Court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it was the true reason for [the employer's action].'" *Hawkins*, 203 F.3d at 279 (quoting *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)).

The plaintiff disagrees that she was less qualified for the Upstate UPOO position; but she has not created any genuine issue of fact in that regard.  At best and despite her insistence to the contrary, she has merely shown she had "similar or . . . slightly superior" qualifications to Epperson. *Heiko, 434 F.3d at 261*  The Court, therefore, cannot substitute its judgment for the defendants nor could any reasonable jury conclude that the reasons for selecting Epperson over the plaintiff were false based on the plaintiff's evidence.

### 2.    The Midlands MPOO

The plaintiff also sought a detail to the Midlands MPOO position in January 2002.[7] The defendant responds that the Midlands MPOO position was eliminated in a Reduction-in-Force ("RIF"), never posted as open, and no employee was promoted to that position. (Def.'s Mem. Supp. Summ. J. at 40.)  The plaintiff makes no rejoinder or evidentiary showing in response to the defendant's legitimate, non-discriminatory basis.  Accordingly, she has not created a genuine issue of pretext as to the Midlands position.

### 3.    Greenville Postmaster

Although it is not entirely clear from the parties' briefs, the plaintiff also applied for the Greenville Postmaster position at some point.  The defendant has explained that the position was highly competitive and that a review board, convened to fill the position, considered over thirty-three candidates, selecting three individuals to interview, not including the plaintiff.  (Def.'s Mem. Supp. Summ. J. Ex. 35 at 9-10.)

---

[7]   The plaintiff summarily contends that she had previously requested the detail sometime in 2000 but the Court has not been directed to any evidence of such request.

The plaintiff again attempts to make a mechanical comparison of her job history with Steve Niedziela, the person ultimately selected for the job. She has made no comparison to Suzanne Small or Sheila Marsh, the other two individuals granted an interview over the plaintiff but not given the detail. The plaintiff contends that both she and Niedziela had "a comparable number of years' experience" but she had twice been a Postmaster, whereas Niedziela had not.

The chairman of the review board has testified that she found the plaintiff's application inferior to those of the candidates recommended for interviews. The chairman stated that the plaintiff (1) did not have outstanding merit evaluations; (2) had not participated in the Advanced Leadership Program ("ALP"); (3) had no recent upper-level details; (4) and her narratives in her application were inferior and did not reflect that she was performing well in her current position as Postmaster at Anderson. (Def.'s Mem. Supp. Summ. J. Ex. 35 at 9-17.) Maybe more important than the deficiencies discussed in the plaintiff's application is the admiration expressed, by the chairman, for Niedziela's application. (*Id*. Ex. 35 at 14.)

To expose the defendant's reasons as pretextual, the plaintiff first responds that an "outstanding merit" rating did not exist at the time she applied for the detail. The plaintiff's argument is mere semantics. The plaintiff freely admits that there was a top-tier rating, entitled "far exceeds." In fact, she boasts that she was "recommended" for that rating in the previous year. (Pl.'s Mem. Resp. Summ. J. at 11, 33.) However, as the chairman of the review board correctly noted in the first instance, she was never, in fact, rated as "far exceeds." *See id*. The plaintiff misconstrues her burden in this regard. Whether or not she was a good performer is immaterial; the plaintiff is not required to demonstrate that her work was meeting the expectations of her employer – as is required in a termination case. Instead, the issue is whether her qualifications were "demonstrably superior" to Niedzala's. *See Heiko,* 434 F.3d at 261. Evidence that she "almost" received a single, "far exceeds"

14

rating does not make her qualifications "demonstrably superior" to a candidate who had, in fact, received such a rating (Def.'s Mem. Supp. Summ. J. Ex. 35 at 14).

The plaintiff further contends that the defendant's evaluation of the candidates participation in the Advanced Leadership Program ("ALP") is entirely pretextual, as none of the candidates had actually participated in the ALP at the time the position was filled. Specifically, the plaintiff argues that the ALP had only been available for two years when she applied for the Postmaster's position and that Niedziela was the first employee in South Carolina to complete the program, nearly two years after the position was filled. To that end, the plaintiff has submitted a listing of ALP graduates as evidence that none of the candidates for the Postmaster position had participated in the ALP. (Pl.'s Resp. Summ. J. Ex. 46.)

In contrast, the chairman of the review board specifically testified, while reviewing the resumes of each of the three candidates who were interviewed, that they had, in fact, participated in the ALP prior to the relevant time. (Def.'s Mem. Supp. Summ. J. Ex. 15 at 14-15.) The Court would agree that there exists an issue of fact as to whether Niedziela had completed the ALP at the time of the decision to detail him as the Greenville Postmaster; there is no question but that the plaintiff had not completed the ALP (Pl.'s Resp. Summ. J. at 34.)

This disputed issue of fact, however, is not material. No reasonable jury could conclude that the various and unrebutted reasons for selecting Niedziela over thirty-two other candidates, including the plaintiff, are pretextual on the basis of this discrepancy alone. She has produced no evidence to undermine the claim that Niedziela was an exceptionally qualified candidate. Certainly, the fact that the candidates may not have taken the ALP in no way demonstrates that she was "demonstrably superior" to Niedziela as a candidate, which is her burden to prove. *See Heiko,* 434 F.3d at 261.

15

### 4.    Manager Operations Program Support

By letter dated December 11, 2000, the plaintiff notified Larry Jones, District Manager for the Greater South Carolina District, that she was requesting a detail to the Manager Operations Program Support ("MOPS") and generally to any EAS 24 or higher detail in the District. (Pl.'s Resp. Summ. J. Ex. 30).  Jones responded on January 5, 2001 and explained to the plaintiff that the MOPS was being permanently filled.  (*Id*. Ex. 31). Later, William Wong was laterally transferred to the Manager Operations Program Support.

The defendant states that the MOPS was filled "non-competitively."  The defendant represents that vacant positions can be filled non-competitively by the USPS -- without opening the position to applications -- by transferring an employee into the vacancy from the same level or a higher level position.  (Def.'s Mem. Supp. Summ. J. at 43.) The MOPS is a Level 24 position.  The plaintiff was a level 22, at the time.  Accordingly, the plaintiff could not be detailed to that position.

The plaintiff has made no rejoinder to the defendant's proffer, other than to disparage the competency of Wong, generally (Pl.'s Resp. Summ. J. at 19 n.11).  Such evidence is totally irrelevant to whether the reason for rejecting the plaintiff was true. Accordingly, the plaintiff has not met her burden to produce evidence that the defendant's legitimate, non-discriminatory reason for denying her the detail was not the true reason.

### 6.    Manager of Marketing

For precisely the same reasons as discussed in regards to the MOPS position, the plaintiff has not met the legitimate, non-discriminatory reason of the defendant -- that the Manager of Marketing position was filled non-competitively -- with competent evidence. The plaintiff has made no response whatsoever.

### 7.    Senior MPOO

The plaintiff wrote a letter to Jones on October 22, 1999 requesting the Senior MPOO position.  (Def.'s Mem. Supp. Summ. J. Ex. 6.)  The defendant has produced

16

evidence that Lee Asbury was already serving a detail in that position at the time of the plaintiff's request. (*Id*. Ex. 62 at 297.) The plaintiff has produced no evidence to the contrary.

The defendants further contend that, even if the position had been available, the plaintiff cannot establish that she was more qualified for the position. The plaintiff disingenuously responds that she had "more years' experience" than Asbury (less than 8 months more) and progressed through the position levels at a more accelerated rate. As discussed in regards to Epperson and Niedziela neither of these facts are evidence that the plaintiff had "demonstrably superior" qualifications from which a reasonable jury could infer discrimination. On paper, the plaintiff's and Asbury's "job history" were comparable at best. Accordingly, the decision as between the candidates is a business judgment within the defendant's discretion, which the Court will not disturb. *See Heiko,* 434 F.3d at 261.

### 8.     Low Country MPOO

Finally, the plaintiff also applied for the Low Country MPOO. The defendant contends that the plaintiff was not qualified to apply for that position because it was restricted to candidates who resided within a local commute radius of 50 miles and the plaintiff was domiciled in Corpus Christi, Texas at the time (Pl.'s Resp. Summ. J. at 20.)

The plaintiff responds that this restriction was not originally a part of the listing for the MPOO position. This allegation causes the Court some concern and might be evidence that the defendant's proffered reason is, in fact, untrue were it supported by admissible evidence. The plaintiff, however, has not directed the Court's attention to any evidence that the restriction did not appear in the original listing. The Court has attempted to review the record in this regard without success. Accordingly, the plaintiff has failed to create a genuine issue of fact as to whether the defendant's legitimate, non-discriminatory reason is true.

Moreover, the defendant has submitted evidence, unrebutted by the plaintiff, that she was not the most qualified candidate for the Low Country MPOO, regardless.  (See Def.'s Mem. Supp. Summ. J. Ex. 61 at 56-57.)

For all these reasons, the plaintiff's gender discrimination claim should be dismissed.

## II.    RETALIATION CLAIM

The plaintiff also contends that she was refused these same promotions and detail requests in retaliation for engaging in EEO activity and for sending written notice to Congressman Lindsay Graham's office concerning the transfer of five supervisors from the Anderson Post Office (Pl.'s Resp. Summ. J. Ex. 24).

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of [its] employees . . . because he [or she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).  The *McDonnell Douglas* burden shifting scheme, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies in analyzing retaliation claims under Title VII.  *Smith v. First Union Nat'l Bank*, 202 F.3d 234 (4th Cir. 2000).  As stated, the defendant does not attempt to use direct evidence to establish her claim of retaliation.

### A.    *Prima Face* Case

In order to establish a *prima facie* case of Title VII retaliation, the plaintiff must prove three elements: (1) that she engaged in a protected activity, (2) that an adverse employment action was taken against her, and (3) that there was a causal link between the protected activity and the adverse employment action.  *See EEOC v. Navy Federal Credit Union,* 424 F.3d 397, 406 (4th Cir. 2005); *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004).

The defendant does not strenuously contest that the plaintiff can establish a *prima facie* case.  Namely, the plaintiff alleges that she was refused promotion and detail requests for a myriad of EEO activity in December 1999; April and September 2000; and April and

18

June, 2001. Her EEO complaints are protected activities. *See E.E.O.C. v. Navy*, 424 f.3d 397, 406 (4th Cir. 2005) ("[P]rotected oppositional activities may include 'staging informal protests and voicing one's own opinions in order to bring attention to an employer's discriminatory activities,' as well as 'complain[ts] . . . about suspected violations.'"); *Eastland v. Tennessee Valley Authority*, 704 F.2d 613, 627 (11th Cir.1983) (describing protected activity simply as "contacting an EEO officer"); *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir.1997) (reasoning that meeting with EEO counselor even without alleging discrimination constitutes protected activity under the participation clause, because that clause and the opposition clause serve distinct functions); *Bell v. Gonzales*, 398 F. Supp. 2d 78, 94-95 (D.D.C. 2005) ("Initiation of EEO counseling to explore whether an employee has a basis for alleging discrimination constitutes protected activity, even in the absence of an unequivocal allegation of discrimination.")

Moreover, denial of promotional opportunities can constitute an "adverse employment action." *See Bryant*, 333 F.3d at 544; *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001); *DiMeglio v. Haines*, 45 F.3d 790, 804 & n.6 (4th Cir. 1995) (considering a reprimand and reassignment of duties as an adverse employment action). Recently, in *Burlington Northern and Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405 (2006), the United States Supreme Court articulated an objective test for what constitutes an adverse employment action for purposes of a Title VII retaliation claim. Specifically, the Supreme Court stated that an adverse employment action is any action which might have "dissuaded a reasonable worker from making or supporting a charge of discrimination. " *Id*. at 2415 (citation omitted). The retaliation provision of Title VII is intended to prohibit employer actions "that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers." *Id*. Although normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence, *id*., an employer's actions are to be considered in light of the "circumstances of the particular case, and should be judged

19

from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances," *id*. at 2417. The plaintiff has likely created a genuine issue of fact as to whether the denial of various promotions and details constitute an adverse employment action.

Finally, the undisputed temporal proximity between the plaintiff's EEOC activity and various denials of her request for certain positions ,creates a genuine issue of fact in regards to the causation element of her *prima facie* case. "[V]ery little evidence of a causal connection is required to establish a prima facie case" and "merely the closeness in time between the filing of a discrimination charge and an employer's firing an employee is sufficient" to satisfy the causation element of a *prima facie* retaliation case. *Tinsley v. First Union Nat. Bank*, 155 F.3d 435, 443 (4th Cir.1998); *see also Williams v. Cerberonics, Inc.*, 871 F.2d 452 (4th Cir.1989) (holding three month time period between protected activity and termination sufficient to satisfy the causation element of the *prima facie* case of retaliation); *Carter v. Ball*, 33 F.3d 450 (4th Cir. 1994) (finding causal link between filing of retaliation complaints and the plaintiff's demotion five months later).

### B.    Pretext

Notwithstanding the likelihood that the plaintiff could establish a *prima facie* case, she cannot rebut the defendant's legitimate, non-discriminatory reason. As discussed in regards to her discrimination claim, the plaintiff has not produced evidence that the defendant's legitimate, non-discriminatory reasons for rejecting her position requests were, in fact, false.

Moreover, the temporal proximity established in the plaintiff's *prima facie* case, alone and on the facts of this case, is insufficient evidence of pretext from which a jury could infer discriminatory retaliation. *See Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 820 & n.5 (8th Cir. 1998) (holding that while close proximity in timing may be sufficient for a jury to find the causation element of plaintiff's prima facie case, it is insufficient to establish pretext);

20

*Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d 1997) ("[E]ven if timing alone can prove causation where the discharge follows only two days after the complaint, the mere fact that adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events."); *Swanson v. General Serv. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997); *see, e.g., Gibson v. Old Town Trolley Tours*, 160 F.3d 177, 182 (4th Cir. 1998) (finding the plaintiff failed to establish pretext concerning the supervisor's failure to complete reference forms, despite proof that the supervisor knew the plaintiff had made an EEO complaint).

To find causation on the basis of this "bare-boned evidence" of temporal proximity "asks the court to move beyond inference and into the realm of mere 'speculation and conjecture.'" *Gibson*, 160 F.3d at 181 (internal quotation marks and citation omitted). With no further evidence supporting her theory, a reasonable factfinder could not draw from the record the conclusion that the defendant terminated the plaintiff's employment in retaliation for her protected activity. *See id.* "[A] jury may . . . not be allowed to infer [retaliation] from evidence that does no more than suggest it as a possibility." *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 245 (4th Cir. 1982). Accordingly, the plaintiff's retaliation claim should be dismissed.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendant's motion to dismiss and for summary judgment be granted.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks
United States Magistrate Judge

August 16, 2006
Greenville, South Carolina

21